# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> PRAKASH KUMAR, <br> Defendant. | Case No. 2:15-cr-185-KJD-CWH <br><br> ORDER |

Presently before the Court is Defendant's Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement (#47/48). The Government filed a response in opposition (#49) to which Defendant replied (#51). Defendant makes this motion due to the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and to him in particular. For the following reasons, the court DENIES defendant's motion.

I. BACKGROUND

On May 11, 2016, Defendant Prakash Kumar pled guilty to receipt of child pornography under 18 U.S.C. § 2252A(a)(2). The stipulated facts showed that a Department of Homeland Security agent was able to download child pornography from Defendant's computer. On October 26, 2016, the Court sentenced him to a term of imprisonment of 78 months, with 300 months of supervised release and a restitution payment of $9,000.00. The majority of the conduct underlying the offense took place at defendant's home via the internet. His projected release date is August 9, 2022.

1    Defendant is housed at FCI Terminal Island. The Bureau of Prisons ("BOP") currently
2 reports zero (0) active inmate cases of COVID-19, zero staff active cases, ten (10) inmate deaths
3 and 570 inmates recovered at Terminal Island at the time of this writing. See Bureau of Prisons
4 (BOP), COVID-19 Cases (updated daily) (last accessed November 10, 2020).[1]
5    Defendant asserts he has medical conditions that make him particularly vulnerable to
6 serious harm from COVID-19. Specifically, he states he has Type 2 diabetes, hyperlipidemia
7 (high cholesterol) and has already suffered damage from a bout with COVID-19. BOP recorded
8 his positive test for COVID-19 on or about April 24, 2020, though it appears that he was sent to
9 a community hospital on or about April 21, 2020 for his COVID related symptoms. He was
10 stabilized and sent back to Terminal Island approximately April 25, 2020. His records show that
11 his case was marked resolved no later than May 27, 2020.  His briefing asserts that despite being
12 marked "recovered," he was experiencing residual lung damage a month after discharge.
13 However, the records are clear that by May 8, 2020, Defendant was denying any symptoms and
14 that by May 26, 2020 any residual effect had cleared.
15    On June 14, 2020, defendant wrote the warden of Terminal Island, requesting a reduction
16 in sentence under 18 U.S.C. § 3582. Defendant asserts that he has received no response. He then
17 filed the present motion.

## II. LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

---

[1] bop.gov/coronavirus/

- 2 -

> factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody in a policy statement. Id.

Here, the Government agrees that the Court has the authority to rule on Defendant's motion because Defendant exhausted his administrative remedies and because "extraordinary and compelling reasons" exist to consider a sentence reduction. The Court will deny Defendant's motion because Defendant is still a danger to the community and because compassionate release is not necessary to protect Defendant's health.

III. DISCUSSION

A. Danger to the Community

Defendant has not met his burden to show he is not a danger to the community. The government argues defendant remains a danger to the community. In considering dangerousness, the Court is guided by the sentencing factor focused on "the need for the sentence imposed … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). It also considers the Sentencing Guidelines policy statement that before reducing a term of imprisonment that "defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)[.]"

Many district courts who have analyzed similar motions in the midst of the COVID-19 pandemic have concluded that a defendant who has suffered the same conviction as defendant's should not be released to home confinement, where there is a risk he will reoffend. See, *e.g.*, United State v. Boyle, No. 2:16-cr-00048-KJM, 2020 WL 6044175, *3 (E.D. Cal. October 13, 2020); United States v. Feiling, 453 F. Supp. 3d 832, 842 (E.D. Va. 2020) (denying motion for

compassionate release of defendant convicted of possession of child pornography in part because defendant committed offense while at home, "meaning a term of home confinement would be less likely to protect the public"); United States v. Miezin, No. 1:13-CR-15, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying motion for compassionate release of defendant convicted of receipt and distribution of child pornography, in part because "[i]n today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct."); United States v. Hylander, No. 18-CR-60017, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography because "defendant proposes to be released to the home with his wife and brother-in-law, which is precisely the location in which the offense for which he was convicted was committed, and presents a concern that Defendant will reoffend."); *cf.* United States v. Fischman, No. 16-CR-00246-HSG-1, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020) (granting motion for compassionate release by defendant convicted of possession of child pornography where defendant had served majority of his sentence, taken steps towards rehabilitation while in prison, and was scheduled to be moved to a halfway house in a few months).

Here, Defendant asserts that prior to his underlying conviction that he had no criminal history. He further argues that his underlying conviction was not violent. However, it is easy to note that he was able to keep his possession and distribution of child pornography hidden for many years, and perhaps decades, because the conduct occurred in the privacy of his home. Further, while possessing child pornography is not "violent", the Court cannot ignore the fact that Kumar capitalized on the actions of others who were willing to exploit and violate children. Kumar admitted that he had a sexual predilection for children under the age of 10. Thus, his lack of a criminal record and the nature of his offense do not sufficiently mitigate the fact that defendant, as in similar cases, proposes to be returned to the same environment in which he committed his prior offenses.

He asserts that strict conditions prohibiting unmonitored computer use will prevent recidivism. His plan does not address the serious questions raised by his prior conduct, and the apparent significant potential for recidivism. Indeed, short of removing all connected devices from the home, including those owned by his wife, which defendant does not propose, it is not clear any condition could be imposed that would reliably safeguard the community. Setting aside the other factors relevant to release under the compassionate release statute, defendant has not met his burden of showing he would not be a danger to the community if he was released. Therefore, on this basis alone the Court denies Defendant's motion.

### B. Extraordinary and Compelling Circumstances

While COVID-19 is not to be taken lightly and its mere existence raises genuine questions going to the heart of whether extraordinary and compelling circumstances coupled with Defendant's health justify his release, there are two changes in circumstance that prevent the Court from finding that Defendant must be granted compassionate relief.

First, despite the problems with prevention in the prison system, Terminal Island currently reports zero inmate infections and zero staff infections. With the widespread advance of community transmission cases in Las Vegas, it does not appear that Defendant is any safer on supervised release than in his present situation. Further, while Defendant complains that his diabetes is not well managed in confinement, his pre-sentence investigation report notes that prior to custody Defendant did not manage his diabetes. Therefore, there is no reason to believe that a change in custody will benefit his diabetes.

Second, Defendant has already recovered from COVID-19. The most recent science concludes that neutralizing antibodies are stably produced for at least 5-7 months after SARS-CoV-2[2] infection. See Tyler J. Ripperger *et al.*, Orthogonal SARS-CoV-2 Serological Assays Enable Surveillance of Low-Prevalence Communities and Reveal Durable Humoral Immunity, Immunity (2020), https://www.cell.com/immunity/fulltext/S1074-7613(20)30445-3. Thus, Defendant's risk is greatly diminished by his natural antibodies. Of nearly thirty million cases worldwide to date, there exist only about 10 documented and confirmed cases of re-infection. Id.

---

[2] SARS-CoV-2 is the causative agent of coronavirus disease 2019 (COVID-19). Ripperger, *supra* *1.

at 10. Accordingly, the Court denies Defendant's motion.

IV. Conclusion

    Accordingly, IT IS HEREBY ORDERED that Defendant's Emergency Motion (#47/48) for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) is **DENIED**.

Dated this 13th day of November 2020.

                                      _____
                                      Kent J. Dawson
                                      United States District Judge